IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

In re:                ) Chapter 13
                      )
KONETA,               ) No. 4:05-bk-08127-JMM
                      )
                      ) **MEMORANDUM DECISION RE:**
                      )
          Debtor.     ) **EFFECT OF OPTION CONTRACT**

The parties have briefed legal issues to the court, and have made arguments concerning the legal effect of a pre-petition option contract. After consideration of the arguments, the undisputed documents, the undisputed chronology of facts, and the law, the court now decides the issues, and explains its reasoning.

## FACTS

On August 12, 2005, the Debtor ("Koneta") and Shirley Mac and Kevin Tucker (collectively, "Mac") entered into a "Lease/Purchase Agreement" for a commercial piece of real property located in Bisbee, Arizona.

Mac was the tenant, who agreed to lease a portion of the commercial premises for 36 months, for a total of lease payments, for the entire period, of $15,012. (Ex. A, Dkt. #100.) Mac paid the entire $15,012 at the commencement of the lease. (Ex. A, Dkt. #100, para. 24.) This equates to $417 per month.

The August 12, 2005 document also contained, within it, a separate agreement, an option to purchase the entire commercial piece (not just the leased portion) for $400,000. (Ex. A, Dkt. #100, para. 26.) In such event, Mac was to be credited with certain payments, to-wit:

1. Unused rents which were paid in advance; and
2. Up to $15,000 for tenant improvements made to the property by Mac.

(Dkt. #100, Ex. A, para. 27.)

The agreement's option provision was contained in paragraph 26. In its entirety, it read:

> PURCHASE: TENANT/BUYER shall have the right to purchase and LANDLORD/SELLER has the obligation to sell the entire property as described in Exhibit A, otherwise known as parcel # 103-72-004A consisting of a concrete and block building of approximately 16,900 sq. ft. building located on 0.83 acres, as per assessors records, for a total purchase price of $400,000.00. This option to purchase may be exercised by TENANT/BUYER at any time during the initial option period. At the end of the initial lease term the option to purchase expires.

Two months later, on October 15, 2005, Koneta filed for chapter 13 relief. A chapter 13 plan has not yet been confirmed.

Thereafter, Koneta and Mac made two changes to the August 12, 2005 agreement:

1. On February 1, 2006, the area leased to Mac was expanded, and Mac agreed to paint and maintain the exterior of such new portion. (Ex. B, Dkt. #100.)

2. On March 24, 2006, Mac agreed to exercise the option, and Koneta agreed to reduce the purchase price from $400,000 to $375,000. Koneta also agreed to further reduce the purchase price by $12,915 as a "Rental Credit to Buyer [Mac]."

Additionally, Koneta agreed to accept, not cash, but a promissory note for a portion of the balance, payable monthly with a balloon payment due November 1, 2008.

(Ex. C, Dkt. #100.)

Neither the February 1, 2006, nor the March 24, 2006 agreements were presented to the bankruptcy court for approval.

## THE LAW

The August 12, 2005, Lease/Purchase Agreement is divisible into two parts. First, the lease portion is an executory contract, subject to assumption or rejection. 11 U.S.C. § 365. Second, the option to purchase portion is not an executory contract, but may be performed (or not) by the optionee (Mac) pursuant to its terms. *In re Robert L. Helms Constr. and Dev. Co. v. Southmark Corp.*, 139 F.3d 702 (9th Cir. 1997). However, there is no evidence in the record that the option to purchase was ever recorded. If not, the unrecorded interest of Mac may not be enforceable against the Koneta bankruptcy estate. Compare ARIZ. REV. STAT. §§ 33-411; 412 to 11 U.S.C. §§ 544(a) and 103(a).

Of the two post-petition changes made to the Lease/Purchase Agreement, the court finds and concludes that the February 1, 2006 "expand and paint" amendment is within the ordinary course of Koneta's business, and therefore it was and is valid, not requiring bankruptcy court approval. 11 U.S.C. § 363(b) (trustee may lease or use property in the normal course of business.)

But, with respect to the changes made to the option portion of the August 12, 2005 agreement on March 24, 2006, the court finds and concludes that those changes were not in the ordinary course of business. This is because Koneta unilaterally reduced the $400,000 option price by $25,000, and agreed to a payment provision inconsistent with the requirements for payment of the entire purchase price.

## Did the August 12, 2005 Agreement contemplate a sale 'subject to" or "free and clear of" the underlying lien?

At the core of this controversy is the interpretation of paragraph 26 of the August 12, 2005 agreement quoted above, at 2, lines 10-14.

The parties negotiated the agreement without benefit of counsel. Their intentions are to be discerned by the document itself, if it is unambiguous. The court finds no ambiguity in the document.

Case 4:05-bk-08127-JMM    Doc 103    Filed 12/08/06    Entered 12/08/06 14:54:29    Desc
Main Document      Page 3 of 6

It is silent on the importance, if any, of any underlying lien. Therefore, the court interprets the parties' intentions to convey the subject real property on a quit-claim basis, subject only to the credits expressed in the document, those being any unused rent, plus any tenant improvements up to $15,000. Had the parties intended to include the underlying mortgage as a credit, they could have easily said so, as they later did on March 24, 2006.[1] On August 12, 2005, the legal effect of what the parties contracted for was that the subject property would be quit-claimed to Mac upon payment of $400,000, less a $15,000 credit for tenant improvements and an additional credit for any unused rent payments. Thus, the contemplated sale was one subject to the underlying liens, interests, and encumbrances.

The changes which the parties attempted on March 24, 2006 were material and were not within the ordinary course of Koneta's business. As such, they required court approval.

Koneta unilaterally modified the option without court approval by $25,000. In addition, rather than receive cash at closing, as contemplated by the original agreement, Koneta agreed to accept payments over time. Both changes were material and adverse to the estate's interest. Neither of these changes were not within the ordinary course of business exception, as they materially changed the contract to the detriment of Koneta's creditors.

Most important, though, was Koneta's decision, via the March 24, 2006, agreement, to add a very important term to the August 12, 2005 agreement--that the buyer (Mac) would <u>assume</u> the existing $220,000 lien against the property, and the estate's net interest would be <u>reduced</u> by the same amount. This was an entirely new term, never hinted at in the August 12, 2005 Lease/Purchase Agreement. It severely crippled the expressed benefit of the bargain contemplated by the August 12, 2005 agreement.

Section 363 states that a trustee (or debtor in possession) may only "use, sell, or lease" property outside the ordinary course of business "after notice and a hearing." 11 U.S.C. § 363(b)(1). Neither party disputes that Koneta's post-petition agreement with Mac, to exercise a modified option

---

[1] That they, post-petition, included such a provision on March 24, 2006, is immaterial. The court must construe the parties' intentions as of August 12, 2005, from the four corners of that unambiguous document.

-4-

contract, involved the use of estate property outside the ordinary course of business and therefore required court approval after notice and a hearing. *240 North Brand Partners, Ltd. v. Colony GFP Partners, L.P. (In re 240 North Brand Partners, Ltd.)*, 200 B.R. 653, 659 (9th Cir.BAP1996 ); *cf.*, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L. Ed. 865 (1950) (due process principles require "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

Because the requirements of § 363(b) protect the creditors' interest in the estate's assets, "[t]he usual effect of a sale or lease of property of the estate, conducted outside of the ordinary course of business but without adherence to the notice and hearing requirements of § 363(b)(1), is that any sale held is rendered null and void ." *In re Weisser Eyecare, Inc.*, 245 B.R. 844, 850 (Bkrtcy. N.D. Ill. 2000); *240 North Brand Partners, 200 B.R. at 659; United States v. Goodstein*, 883 F.2d 1362, 1367 (7th Cir.1989).

Court approval not being obtained, the March 24, 2006 agreement is declared to be null and void and of no legal force and effect.

## CONCLUSIONS

1. The August 12, 2005 option provision of the contract may be exercised by Mac, in Mac's sole discretion;

2. Mac must pay, should the option be exercised, $400,000 in cash, less a $15,000 tenant improvement credit, and a credit for unused rent up to the date of closing;

3. In addition, should Mac exercise the option, the purchase price to be paid to the estate shall be such amount, as set forth in paragraph 2, above, without additional credit being given for the underlying mortgage. The deed shall be a quit-claim deed, subject to underlying liens, interests, and encumbrances. The Debtor's estate shall be

entitled to the net amount ($400,000 less $15,000 improvement credit, and unused rent credit); and

4. A separate order shall be entered, which disposes of the issue of Mac's interest in this commercial property.

DATED: December 8, 2006.

JAMES M. MARLAR
UNITED STATES BANKRUPTCY JUDGE

COPIES served as indicated below
this 8th day of December, 2006, upon:

Eric Ollason
182 N. Court Ave.
Tucson, AZ 85701
Email eollason@182court.com
Attorney for Debtor

David Wm. Engelman
Bradley D. Pack
Engelman Berger, P.C.
3636 North Central Ave., Suite 700
Phoenix, AZ 85012
Email: dwe@engelmanberger.com
Email: bdp@engelmanberger.com
Attorneys for Shirley Mac and Kevin Tucker

Dianne C. Kerns
7320 N. La Cholla #154
PMB 413
Tucson, AZ 85741-2305
Email mail@dcktrustee.com
Chapter 13 Trustee

Office of the United States Trustee
230 North First Avenue, Suite 204
Phoenix, AZ 85003-1706
U.S. Mail

By /s/ M. B. Thompson
     Judicial Assistant